Fergus GINTHER and Adriana Newsom, Plaintiffs,

v.

TEXAS COMMERCE BANK, N.A., Aetna Insurance Company, Maryland Casualty Company, Plaza Commerce Bank, N.A., Texas Commerce Bancshares, Inc., Houston National Bank, N.A., now Republic Bank of Dallas, N.A., and/or Republic Bank of Houston, N.A., Tony Levintino, Collier-Cobb & Associates of Texas, Inc., Collier-Cobb & Associates Incorporated, individually and d/b/a Collier-Cobb Insurance Agency, Ralph G. Ragland, Douglas Ragland, Jerry Albright, Dr. John L. Martin, Sunstream Associates, Limited, Michael Pohl, Gilpin Maynard, Parsons, Pohl & Bennett, Daniel O'Connell, Ronald J. Sommers, Lackshin & Nathan, P.C., Barbara Ann Vanderbeck, Douglas Little, Liddle, Sapp, Zivley, Brown & LaBoon, Tom F. Coleman, Jr. and Able & Coleman, Defendants.

Civ. A. No. H-85-6191.

United States District Court, S.D. Texas, Houston Division.

May 28, 1986.

616

Benton Musslewhite, Houston, Tex., for plaintiffs.

Harvey G. Brown, Jr., Sewell & Riggs, Houston, Tex., for Ronald J. Sommers and Lackshen & Nathan, P.C.

Stephen R. Kirklin, Kirklin, Boudreaux & Joseph, Houston, Tex., for Gilpin, Maynard, Parsons, Pohl & Bennett.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

NORMAN W. BLACK, District Judge.

This is the latest in a series of law suits filed by Fergus M. Ginther, hereinafter ("Ginther"), a lawyer, who is presently represented by Mr. Benton Musslewhite.

The Court is of the opinion that the case at bar is an example of the kind of abuse which the drafters of Fed.R.Civ.P. 11 sought to prevent. The Court is confronted with a pattern of continuing harassment, misuse of the Court's resources, abuse of opposing parties and disobedience of Court orders. Such abuse justifies the imposition of sanctions under Rule 11 and 28 U.S.C. § 1927 against Ginther and his current attorney in the amount of $167,500.00 as herein below explained. For the reasons set forth below, and pursuant to the requirements of Fed.R.Civ.P. 52(a), the Court concludes that its actions are mandated by the facts presented in this case after the taking of evidence and upon consideration of the applicable law.

If Mr. Musslewhite or any other reasonable attorney had made the inquiry he is required to make under Rule 11, he would have learned the history of Ginther's previous suits and would not have undertaken to file the instant suit. This Court had no choice but to grant the motions for summary judgment, dismissal and sanctions filed by the various Defendants. Furthermore, due to Ginther's pursuit of nonmeritorious claims, and nonresponsiveness to court orders and sanctions, this Court also must grant Defendants' application for permanent injunctive relief.

During the past six years, Ginther has engaged in a series of lawsuits and requests for court action in state, federal, bankruptcy and federal appellate courts. Ginther's discovery abuses and other abuses of the judicial system throughout the various actions have led to his being sanctioned by these various courts, including this Court, on numerous occasions. Unfortunately, those sanctions have not yet been sufficiently severe to deter him from continuing to file volumes of pleadings which merely reurge upon the courts the same set of factual allegations under the guise of another legal theory. In the instant suit, and during the course of each prior litigation, Ginther exhibited a pattern of failing to honor the legitimate discovery requests of the various opposing counsel who tried to determine the factual and legal bases of his claims.

Ginther's latest suit arises out of four sets of transactions: (1) the 1979 decision by Texas Commerce Bank-Greenway Plaza, N.A. not to extend additional credit to Ginther and his companies after their default in payment; (2) the September, 1981 filing of an involuntary bankruptcy proceeding against Ginther and his business entities; (3) a business relationship between Ginther and Ralph G. Ragland (hereinafter "Ragland") regarding a building project known

as "the 7211 project;" and (4) the issuance of a writ of attachment against Ginther in November, 1983.

All of these matters have been the subject of previous litigation which resulted in adjudications adverse to Ginther. Ginther's counsel tried to avoid the *res judicata* issue by urging a conspiracy theory, which would link all of the previous acts into a massive ongoing conspiracy. This theory, if viable, would also avoid the limitations bar to many of his claims. However, the conspiracy theory fails, as none of the Defendants who have been Ginther's prior creditors and adversaries have engaged in the alleged wrongful acts. With no wrongful act shown, no one can have conspired to commit a wrongful act. The conspiracy theory is an attempt to ignore the fact that the issues raised in the present suit are barred by *res judicata.* The only real distinction in the instant suit is the addition of Adriana Newsom, Ginther's girlfriend, as another party Plaintiff. Any attempt to examine the pleadings on file at this Court and in the state courts regarding these matters would have convinced any reasonable attorney of the futility of filing the instant suit. Moreover, on May 16, 1985, this Court ordered Ginther and his attorneys not to file another suit regarding the matters stated by Mr. Musslewhite to be the heart of the present suit.

Ginther's present suit reurges various claims against Texas Commerce Bank arising from a banking decision in 1979 to discontinue extending credit to Ginther. Later that year, the Bank filed a collection suit against Ginther, who counterclaimed. That suit is still pending today in the state courts. Consequently, filing of the instant suit was absolutely unnecessary for the protection of any claims Ginther might have against Texas Commerce Bank.

Ginther previously lost the opportunity to litigate the Texas Commerce Bank matter in federal court because he had failed to comply with court orders. In early 1980, Ginther filed a separate suit styled *Ginther-Davis Construction Co., Inc., et al., v. Texas Commerce Bank, et al.,* C.A. No. 80–687 in the United States District Court (Judge Singleton, presiding). His suit alleged the same facts and transactions as in the state court counterclaim, except that he asserted additional causes of action which he alleged entitled him to recover $250,-000,000.00 in damages from the Bank. Approxixmately one year after the Defendants appeared and asserted defenses, Judge Singleton dismissed the action with prejudice due to Ginther's numerous discovery abuses.

Even though Ginther had ample opportunity to present his claims in Judge Singleton's court, he lost that opportunity by his own conduct. He is not entitled to bring those claims before this Court again, and his instant suit demonstrates conscious indifference to the nature and purpose of the sanctions previously imposed against him.

Any inquiry into the facts would also have revealed to counsel that the claims surrounding the filing of the involuntary bankruptcy had also been previously litigated. In September, 1981, Texas Commerce Bank—Greenway Plaza, N.A. filed an involuntary bankruptcy petition against Ginther and various Ginther companies, alleging his insolvency. Ginther contested the petition and counterclaimed on several grounds including that the Bank's petition was filed in bad faith because Ginther had more than twelve creditors and, therefore, Texas Commerce Bank should have found two additional creditors to join in the involuntary petition.[1] Eventually, the bankruptcy court (Judge Patton, presiding) heard evidence on the involuntary petition and on Ginther's counterclaims against the petitioning creditors for wrongful filing. The Bankruptcy Court concluded that the petitioning creditors had met their burden of

---

1. 11 U.S.C. § 303(b) (Supp.1985). Other creditors joined into an amended involuntary petition, as permitted by § 303(c). The number of Ginther's creditors was not disclosed until November, 1983 when Ginther was ordered, as a condition to purging himself of contempt, to file his schedules and statements of affairs, and complete answers to interrogatories and other discovery served on him by his creditors.

proof, and an order for relief was entered on September 7, 1982. The order also dismissed Ginther's various counterclaims against the petitioning creditors. Ginther's motion for a new trial was overruled. He did not appeal.

The order for relief is a conclusive adjudication that the filing of the involuntary proceeding was proper and that Ginther had no meritorious counterclaims against the petitioning creditors based on that filing. In addition, the filing of the involuntary proceeding was not an illegal act and it cannot form the basis of Ginther's current claim that all the various Defendants conspired to place him in bankruptcy.

A pre-filing inquiry would also have revealed to Ginther's counsel that the 7211 project dispute between Ginther and Ragland had been conclusively adjudicated against Ginther on several prior occasions and could not rationally form the basis of yet another suit. In the present suit before this Court, Ginther describes a partnership (the "7211 Partnership") that he entered into with Ragland concerning the development of the 7211 project. Ginther alleges that his interest in the 7211 Partnership was assigned to Ragland, but that a redemption agreement had been entered into between Ginther and Ragland.

Ginther first sought judicial resolution of the 7211 dispute by filing suit on January 6, 1980, in the 80th Judicial District Court of Harris County, Texas, Cause No. 80-00460. Ginther alleged that Ragland had wrongfully foreclosed on collateral pledged by Ginther to secure his indebtedness to Ragland and Ginther also sought reinstatement of his interest in the 7211 Partnership. Ginther sought a temporary restraining order to prevent Ragland's foreclosure of the collateral, and when injunctive relief was denied, Ginther non-suited.

Ginther next filed suit in State Court against Ragland and others on October 7, 1981 in Cause No. 81-49497, styled *Fergus M. Ginther and Don J. Davis, Individually, and as Partners in Ginther-Davis Interests, A Texas Partnership, Plaintiffs v. Ralph G. Ragland, Ragland Manufactur-* *ing Co., Inc. and B. Douglas Ragland, Defendants,* seeking reinstatement of his interest in the 7211 Partnership and monetary damages.

The second suit, (the "State Court Action") was adjudicated adversely to Ginther when his pleadings were struck by District Judge Louis Moore on May 9, 1983, for continuing discovery abuses. Ragland had filed a counterclaim against Ginther in the State Court Action, and on May 9, 1983, the Court also entered a default judgment against Ginther adjudicating the liability of Ginther to Ragland, with unliquidated damages to be proved at a later time.

After Ginther's pleadings were struck in the State Court action, Ginther, under the name of "Ginther-Davis Interests," refiled essentially the identical lawsuit in the United States District Court for the Southern District of Texas on May 10, 1983, Civil Action No. H–83–6158. The federal suit was eventually dismissed with prejudice by order dated July 3, 1984.

Once Ginther and his interests were placed in involuntary bankruptcy, Ragland filed a proof of claim for damages he was entitled to recover under this counterclaim. The Trustee in bankruptcy eventually negotiated a compromise of Ragland's counterclaim (the "Ragland/Trustee Compromise"), and submitted the compromise to this Court for approval since the Ginther bankruptcy proceeding was before this Court at that time. At no time did Ginther file a written objection to the compromise as he was required to do pursuant to the local bankruptcy rules and the order of this Court. Nonetheless, Ginther appeared and made oral objections at a hearing held on the compromise on January 6, 1984. (No one other than Ginther objected to the compromise.) This Court then approved the compromise, and judgment for Ragland was entered in the State Court Action on February 24, 1984 and became final. No appeal was ever taken from the State Court judgment.

Ginther subsequently filed a timely notice of appeal of this Court's Order approving the Ragland/Trustee Compromise, but

the appeal was dismissed by the Fifth Circuit because Ginther failed to timely file his appellant's brief. One year after the order approving the compromise was entered, Ginther attacked the order by filing a Rule 60(b) motion, which this Court denied in May, 1985. Finding the Rule 60(b) motion was frivolous, this Court entered orders sanctioning Ginther and Mr. M. H. Cersonsky, his then attorney, after a hearing on September 13, 1985. Ginther appealed the denial of the 60(b) motion and later appealed the award of sanctions imposed on him. Because Cersonsky had made no independent determination himself as to whether the compromise he sought to overturn had actually been in the best interests of the estate, this Court had no choice but to sanction both Ginther and his attorney. The Court found that Cersonsky did not understand the substantive merits of the Ragland/Trustee Compromise and was not sufficiently familiar with the procedural history of Ginther's litigation. The instant suit attempts to relitigate matters not only adjudicated in the Rule 60(b) proceeding, but matters which this Court expressly ordered Ginther not to raise again. 28 U.S.C. § 1927 (1985).

The Rule 60(b) motion was predicated on the argument that attorneys for the Trustee and for Ragland had acted illegally or unethically in procuring an affidavit from Nicki Monday, a person who supposedly knew about some of Ginther's affairs including the possibility of his transferring and concealing his assets and destroying evidence. This Court has at all times been fully aware of the facts surrounding the procurement of Ms. Monday's affidavit, and has at no time believed any action taken by the attorneys for Ragland or the Trustee was either illegal or unjustified. Moreover, as this Court made clear at numerous hearings, it has given no credence to Ms. Monday, nor did anything Ms. Monday say bear any relationship whatsoever to the merits of the Ragland/Trustee Compromise or influence this Court's determination that the compromise was in the best interests of the estate. Ms. Monday was never a witness before this Court and was not credible or competent to testify. At most, she was an informant.

Because the matters pertaining to Ms. Monday have been raised on so many occasions by Ginther, the Court, on May 16, 1985, ordered Ginther and any attorney or agent representing him to refrain from filing any further pleading, lawsuit or action which in any manner pertained to Ms. Nicki Monday, the affidavits she signed, the Ragland/Trustee Compromise, or the conduct of counsel who participated in such settlement. The instant suit is a direct violation of that order. Even without the court order, it is clear that the matters presented in the instant suit have all been adjudicated before.

Ginther and Musslewhite were both aware of this Court's order of May 16, 1985, when they filed the instant complaint. According to a letter written by Mr. Musslewhite on April 8, 1986, and Mr. Musslewhite's testimony on March 27, 1986, it is evident that both Ginther and Musslewhite considered the Court's order of May 16, 1985 and chose to ignore it.

Any complaints now brought in the present suit regarding the issuance by this Court of a writ of attachment in November, 1983, and Ginther's incarceration for civil contempt are totally without merit. A reasonable pre-filing inquiry into this matter would have revealed that issuance of the writ was necessitated by Ginther's continued obstruction of his bankruptcy proceedings. As this Court has often repeated, Ginther was in contempt of this Court because of his unreasonable refusal to obey the Order requiring, *inter alia*, the filing of his bankruptcy schedules. The circumstances surrounding the writ's issuance simply illustrate Ginther's contempt for and disregard of this Court and the judicial system in general.

From the institution of the bankruptcy proceedings, Ginther failed to cooperate with the Trustee and engaged in a pattern of delay and obstruction. Various parties, including the Trustee, filed motions in 1982 and 1983 in order to have Ginther held in

contempt, but these motions were not ruled on by the United States Bankruptcy Court prior to the time the proceedings were transferred to the United States District Court in October, 1983.

Once the case was transferred, the Trustee refiled his motion for contempt in this Court, and the motion was granted. Ginther once again seeks to claim that the writ was issued solely on the basis of Ms. Monday's affidavit, and that the procurement of the affidavit was illegal, unethical and representative of a conspiracy against Ginther. However, there was nothing wrongful about the issuance of the writ, nor was it based on Ms. Monday's affidavit. Ginther's own willful and wrongful conduct gave this Court no choice but to hold him in contempt until such time as he decided to abide by the provisions of the United States Bankruptcy Code.

Ginther's person and assets were attached and the contempt order was lifted when Ginther filed his statements and schedules of affairs. Until the contempt order was lifted, Ginther was first confined to jail, but then, at the request of his attorney, allowed to voluntarily commit himself and reside in a mental institution.

Ginther attempted but failed to modify, dissolve, or successfully appeal from the writ of attachment. Although numerous requests were made, the writ of attachment was never dissolved. Ginther's appeal from the issuance of the writ of attachment was dismissed for want of prosecution. Therefore, it has been previously determined that the issuance of the writ of attachment was proper and any claims arising from its execution are barred by the doctrine of *res judicata.* Moreover, since the writ was lawfully issued, all of Ginther's claims in the nature of a suit for malicious prosecution, false arrest, trespass and conversion fail for lack of an essential element: wrongful conduct on the part of the Defendants. Ginther has no

present right to pursue any claims arising from execution of the writ of attachment. In any event, the assertion of such claims contravene this Court's Order of May 16, 1985.

Around the same time that the writ of attachment was issued, Ginther was trying to convert his bankruptcy proceeding to a Chapter 11 proceeding in order to wrest control from the Trustee. That attempt was opposed by the creditors of Ginther's estate by a motion filed in November, 1983. The motion to continue appointment of the trustee substantiates the necessity of the issuance of the writ of attachment and details some of Ginther's discovery abuses and fraudulent conveyances. The motion to continue the appointment of the trustee was granted.

Ginther's last suit shows a disregard of the purpose of the judicial system, and is nothing more than an attempt to waste the Court's time and harass the twenty to thirty named Defendants, many of whom have no direct relation to the subject matter of the suit.[2] In fact, at the March 27, 1986 hearing on the pending motions, Plaintiffs' counsel orally dismissed practically all of the Defendants. Plaintiffs chose to do so without having first engaged in any substantive discovery. Plaintiffs' counsel has explained that "everyone" was sued, without knowing their exact relation to the dispute, because there was a possible statute of limitations problem. This, however, is no excuse for failing to following the requirements of Rule 11. As the court noted in *Rodgers v. Lincoln Towing Serv., Inc.,* 596 F.Supp. 13, 27 (N.D.Ill.1984), *aff'd* 771 F.2d 194 (7th Cir.1985), "If the new rule is to mean anything, it must mean that the shotgun approach to pleadings, ... where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick, is to be discouraged."

---

**2.** It is difficult to determine whether all the persons named in the text of Ginther's complaint were actually intended to be Defendants. Mr. Musslewhite stated on March 27, 1986 that

Plaintiffs did not intend to sue most of the named Defendants and that two Plaintiffs, Flemin Gaskin and Fergus M. Ginther, Jr. were inadvertently joined.

Ginther's present complaint consists of forty-two (42) pages of allegations of wrongdoing on the part of over twenty (20) Defendants, and asserts causes of action under the Organized Crime Control Act of 1970, violations of federal and state securities laws (without alleging sales or attempted sale of any securities), violation of the Texas Deceptive Trade Practices Act, violations of the United States and Texas Constitutions and the federal civil rights conspiracy statute, violation of RICO, and common law claims under fraud, false arrest, conspiracy, breach of contract, tortious interference with contract, invasion of privacy, trespass, conversion and some unheard of causes of action such as "economic duress," "outrageous conduct" and "other market place torts." The complaint can be characterized as "ponderous, extravagant and overblown, largely devoid of a colorable legal basis" just as the Court found in *Rodgers v. Lincoln Towing Service, Inc.,* when it sanctioned an attorney under Rule 11, Fed.R.Civ.P.

Furthermore, Plaintiffs' dismissal of numerous Defendants coming four months after filing a suit demanding damages in excess of 500 million dollars and accusing any number of banks, individuals, and attorneys of engaging in criminal acts, appears to have been motivated by a last minute attempt to avoid the imposition of sanctions, the imminency of which had evidently become apparent to Plaintiffs' counsel. Ginther and his counsel should have realized that his allegations cannot be blithely ignored by the Defendants. No matter what the nature of his assertions, the Defendants had to expend legal fees, time and effort to refute the allegations. The mere existence of the suit must be reported to shareholders of the various banks and corporate Defendants, insurers must be put on notice, and in general, the suit caused a very detrimental and disruptive effect on the orderly business transactions of the various Defendants.

Mr. Musslewhite's conduct is clearly in violation of 28 U.S.C. § 1927, because he has unreasonably and vexatiously multiplied these proceedings, and his conduct has caused the defendants to incur unnecessary costs, expenses, and attorneys fees, not to mention the cost that has been incurred by this Court and other litigants whose causes pending before this Court have been delayed in adjudication.

■ Prior to filing the lawsuit, Mr. Musslewhite discussed the merits of the case with Fergus Ginther and Adriana Newsom. He reviewed a few of the pleadings filed in the previous litigations, but mainly learned what they contained by listening to Ginther's description of them. He did not discuss the merits of the case with any of Ginther's former counsel until after suit was filed and did not review any documents prior to filing suit. Although Ginther's attorney did not avail himself of the complete record, he was aware of this Court's order of May 16, 1985. For an attorney to know that a litigant has been ordered not to file another lawsuit pertaining to matters previously litigated, and to file just such a suit in disregard of this Court's order, justifies the imposition of sanctions. Even without the existence of the May 16, 1985, order, it should have been obvious to an attorney that the matters alleged in the present complaint have all been previously litigated, and on such a finding a Court will impose sanctions under Rule 11, Fed.R.Civ.P. *See e.g., McLaughlin v. Bradlee,* 602 F.Supp. 1412, 1417 (D.D.C.1985), *aff'd,* 775 F.2d 389 (D.C.Cir.1985); *Bookkeepers Tax Service, Inc. v. National Cash Register Co.,* 598 F.Supp. 336, 40 (E.D.Tex. 1984).

■ Ginther and his attorney must reimburse the Defendants for the costs, expenses and attorneys' fees incurred in connection with responding to the instant suit. The monetary sanctions imposed by the Court are stated below. Such sanctions are imposed jointly and severally against Ginther, Adriana Newsom, Benton Musslewhite and the Law Offices of Benton Musslewhite, Inc. Furthermore, because of Ginther's past conduct, it is clear that monetary sanctions alone will not ensure that Defendants will be safe from yet another

attack, and immune from again incurring unnecessary legal fees in opposing that attack. Therefore, this Court hereby permanently enjoins Ginther and his personal attorneys, agents, representatives and family members from financing or filing in this, or any other court or tribunal, any motion, action, suit, proceeding or request for relief pertaining to any matter relating in any way to or based on: (1) the 1979 decision by Texas Commerce Bank-Greenway Plaza, N.A. not to extend additional credit to Ginther and his companies; (2) the September, 1981 filing of an involuntary bankruptcy proceeding against Ginther and his interests; (3) a business relationship between Ginther and Ralph G. Ragland regarding a building project known as "the 7211 project;" (4) the issuance of a writ of attachment in November, 1983 against Ginther's properties; (5) any allegations of fraud or conspiracy relating to the acts of the various Defendants who were connected to the above transactions; or (6) any matters whatsoever alleged in the instant suit or in any prior suit which has previously been adjudicated. A separate permanent injunction will be entered by this Court.

By order dated March 7, 1986, the Court asked all Defendants to keep meticulous time records. On March 27, 1986 and again on April 21, 1986 the Court heard evidence of Defendants' attorneys' fees and expenses. Defendants' witnesses were cross-examined by counsel for Ginther.[3] Having carefully considered the evidence, the Court finds that the following amounts should be awarded to Defendants and taxed against Plaintiffs and their lawyers:

| ATTORNEYS | DEFENDANTS | AMOUNT AWARDED |
|---|---|---|
| Stephen R. Kirklin, Kirklin, Boudreaux & Joseph | Michael A. Pohl & Gilpin, Maynard, Parsons, Pohl & Bennett | $50,000.00 |
| Michael A. Pohl, Gilpin, Maynard, Parsons, Pohl & Bennett | Ralph G. Ragland & B. Douglas Ragland | $80,000.00 |
| Douglas Little, Liddell, Sapp & Zivley | Texas Commerce Bank, N.A., Texas Commerce Bank—Greenway Plaza (formerly Plaza Commerce Bank, N.A.), Texas Commerce Bancshares, Inc., Douglas Little, Liddell, Sapp & Zivley | $18,000.00 |
| Joseph Cohen, Hirsch & Westheimer | RepublicBank Houston (formerly Houston National Bank, N.A.), RepublicBank Dallas (formerly Republic National Bank of Dallas), A. S. Levintino, John Hamstra | $13,600.00 |
| Daniel Goforth, Sewell & Riggs | Ronald J. Sommers, Lackshin & Nathan | $ 4,500.00 |
| Lionel M. Schooler, Lackshin & Nathan | Daniel O'Connell | $ 1,750.00 |

---

**3.** Ginther was not present on either March 27, 1986 or April 21, 1986 although he had been ordered by the Court to appear. On April 21 the Court issued a warrant for Ginther's arrest.

Pursuant to the provisions of Fed.R. Civ.P. 52(a) and 60, this Court hereby makes findings of fact and conclusions of law in conformity with the verbal findings and conclusions rendered in open Court on April 21, 1986 and as hereinabove expressed.

*Findings of Fact*

1. Ginther filed C.A. H–85–6191 on November 1, 1986. Ginther did not begin to serve process in this cause until approximately January 15, 1986.

2. A reading of the complaint demonstrates that it contravenes the express prohibition contained in this Court's Order of May 16, 1985.

3. According to the testimony of Mr. Musslewhite, Ginther prepared most of the text of the complaint. The complaint was dictated by Mr. Musslewhite from a draft prepared by Ginther.

4. Mr. Musslewhite was formally retained only three or four days prior to the filing of suit. According to Mr. Musslewhite's affidavit of March 19, 1986, the complaint was, "immediately dictated and filed" and "service of process was delayed so that [Mr. Musslewhite] could further investigate the suit."

5. Ginther's complaint charges the Defendants, many of whom are licensed attorneys and law firms, of racketeering, fraud, conspiracy, perjury and criminal wrongdoing.

6. Neither Ginther nor his counsel have come forward with facts to support these charges.

7. The complaint realleges a number of matters pertaining to Nicki Monday ("Ms. Monday") and the compromise between Ragland as the Trustee which was approved by this Court on January 6, 1984.

8. Mr. Musslewhite acknowledges in the letter dated April 8, 1986, which he tendered to the Court, that the complaint attempts to relitigate the matters involving Ms. Monday and that, in doing so, the actions of Ginther and Mr. Musslewhite contravene this Court's order of May 16, 1985. A copy of Mr. Musslewhite's letter has been tendered by the Court to counsel for Defendants.

9. Mr. Musslewhite testified on March 27, 1986, that the matters pertaining to Ms. Monday constituted a central crux of the complaint.

10. Prior to the filing of the complaint, Ginther and Mr. Musslewhite were aware of this Court's order of May 16, 1985, precluding further litigation involving Ms. Monday, the settlement between Ragland and the Trustee and related matters. Nevertheless, Ginther and Mr. Musslewhite elected to file the complaint.

11. Prior to filing the complaint, neither Ginther nor Mr. Musslewhite requested an amendment or modification to this Court's order of May 16, 1985.

12. Ginther never appealed from this Court's order precluding him from, *inter alia,* relitigating the matters pertaining to Ms. Monday.

13. The complaint was filed without any notice or warning to the Defendants.

14. Before Mr. Musslewhite attempted to obtain service in January, 1986, on the Defendants, he discussed Ginther's prior litigation and, specifically, Ginther's Rule 60(b) motion with M.H. Cersonsky. Mr. Musslewhite was shown a copy of the brief filed by Mr. Cersonsky on behalf of himself and Ginther before the Fifth Circuit. Mr. Cersonsky was then representing Ginther, himself and his law firm in an appeal from the denial of Ginther's Rule 60(b) motion and an appeal from the imposition of sanctions by this Court against them under Rule 11 and 28 U.S.C. § 1927.

15. In his letter of April 8, 1986 Mr. Musslewhite acknowledged that there was a risk of "severe sanctions" in filing the complaint in violation of this Court's order of May 16, 1985.

16. Mr. Musslewhite stated in his letter of April 8 1986 that he should be entitled to reimbursement for any monetary sanctions levied against him for "having been willing to risk contempt and sanctions in order to

protect you [Ginther] from a running of the statute of limitations (by filing the suit in the first place). . . ."

17. In his letter of April 8, 1986 Mr. Musslewhite stated to his clients that he expected "substantial contempt punishment" for violating this Court's order of May 16, 1985.

18. Prior to the time Plaintiffs' sought leave to file their first amended original complaint, counsel for Defendants had expressly reminded Mr. Musslewhite of this Court's order of May 16, 1985. In fact, Steven R. Kirklin, one of the defense counsel, had read this Court's order of May 16, 1985, to Mr. Musslewhite and had advised him that, in Mr. Kirklin's opinion, the filing of the complaint by Mr. Musslewhite on behalf of Ginther constituted a violation of this Court's order of May 16, 1985.

19. In the first amended original complaint which Ginther and Mr. Musslewhite sought leave to file on March 27, 1986, they once again alleged the same matters pertaining to Ms. Monday. Such matters were again the central crux of Ginther's allegations, thus, constituting another direct violation of this Court's order of May 16, 1985.

20. The Court further found in its findings of fact and conclusions of law dated May 17, 1985, that Ginther's estate was insolvent and that Ginther lacked standing to prosecute his Rule 60(b) motion.

21. The compromise between Ragland and the Trustee was approved by the Court following a full evidentiary hearing. Ginther never filed a written objection to the Ragland/Trustee Compromise as was his duty pursuant to a prior order of this Court. Thus, Ginther lacks standing to challenge this Court's approval of the compromise between Ragland and the Trustee.

22. Several of Ginther's litigations as well as his bankruptcy have been filed in or transferred to this Court.

23. Ginther has obstructed these proceedings, has failed to cooperate with his bankruptcy Trustee, has tampered with witnesses and has attempted to make fraudulent conveyances of virtually all of the assets of his bankruptcy estate during the pendence of his bankruptcy. The Court specifically refers to the motion of many of Ginther's creditors to continue the appointment of the Trustee filed in November, 1983, which summarizes Ginther's conduct. Moreover, during the pendency of these proceedings, Ginther and his then attorney, M.H. Cersonsky, misappropriated from the offices of counsel for the Trustee, certain privileged documents. The Court, by its Order dated May 10, 1985, required Ginther and his then counsel, M.H. Cersonsky, to return such documents to counsel for the Trustee.

24. This case was originally filed in the Court of Chief Judge John V. Singleton. Judge Singleton transferred the case to this Court. Prior to such transfer, Judge Singleton found it necessary to enter a temporary restraining order and Mr. Musslewhite agreed to the entry of a preliminary injunction enjoining Plaintiffs from destroying evidence.

25. On September 13, 1985, this Court conducted a hearing for the purposes of determining the amount of sanctions to be awarded against Ginther and his then counsel, M.H. Cersonsky, as a consequence of their violations of Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. At the conclusion of the evidence, this Court fined Ginther $26,-000.00, payable jointly to the Trustee and Ragland. Additionally, the Court fined M.H. Cersonsky $26,000.00, payable jointly to the Trustee and Ragland.

26. If Mr. Musslewhite had made the inquiry he is required to make under Rule 11, he would have learned the history of Ginther's many litigations, including this Court's disposition in May, 1985 of Ginther's Rule 60(b) motion.

27. If Mr. Musslewhite had made the inquiry he is required to make under Rule 11, he would have learned that over the past six (6) years Ginther has engaged in a series of lawsuits.

28. If Mr. Musslewhite had made the inquiry he is required to make under Rule 11, he would have learned of Ginther's

conduct which has led to the imposition of sanctions by this and other Courts.

29. If Mr. Musslewhite had made the inquiry he is required to make under Rule 11, he would have learned prior to filing the Complaint that Ginther was attached and confined to jail as a consequence of his refusal to file his bankruptcy schedules. Ginther was not attached or confined to jail as a consequence of anything stated by Ms. Monday in her affidavit of October 3, 1983.

30. In his letter of April 8, 1986 Mr. Musslewhite states that, "I first learned at the hearing on March 27, 1986, that the reason [the Court] had you arrested was not the Nicki Monday [sic] affidavit for the failure to file schedules in the bankruptcy proceeding."

31. According to Mr. Musslewhite's testimony on March 27, 1986, he was not told by Ginther that the Court jailed Ginther as a consequence of his failure to file his bankruptcy schedules and that the Court, in jailing Ginther, told him that he would be released from jail if he filed his bankruptcy schedules. Mr. Musslewhite made no effort to read the record of the Ginther proceedings before filing suit, before attempting service more than sixty (60) days thereafter, before attempting to file Plaintiffs' first amended original complaint or before the hearing of March 27, 1986.

32. The Court has often explained that the writ of attachment was issued in November, 1983, on motion of the Trustee as a consequence of Ginther's refusal to obey Court orders requiring him to file his bankruptcy schedules. Although transcripts of this Court's proceedings were available, Mr. Musslewhite made no effort to review same prior to filing the Complaint.

33. The fact that Ginther was not attached or confined to jail as a consequence of anything stated by Ms. Monday in her affidavit of October 3, 1983 is apparent on the face of the record. This point has been stated by the Court in the presence of Ginther and his various prior counsel.

34. As Adriana Newsom testified on April 21, 1986, Ms. Monday was not a credible witness and she told Mr. Musslewhite prior to the filing of the Complaint that Ms. Monday was not a credible witness.

35. As admitted by Mr. Musslewhite, Ms. Monday never testified in court or by deposition in these proceedings. This fact is obvious on the face of the record and was within the personal knowledge of both Ginther and M.H. Cersonsky prior to the time the complaint was filed or served.

36. This Court's findings of fact and conclusions of law dated May 17, 1985 reads as follows:

As was stated by the Court on May 3 and May 10, 1985, any information or testimony within the personal knowledge or Ms. Monday was not related to any matter adjudicated by the January order approving the Ragland settlement.

37. On the motion of Ginther's then attorney of record, David Berg, Ginther, while still in contempt of Court, was "voluntarily" committed to Rosewood Hospital for psychiatric treatment. This fact is apparent on the face of the record. Nevertheless, Ginther sued all Defendants in this case for having him involuntarily committed for psychiatric treatment.

38. On Friday, April 18, 1986, this Court held a conference of all counsel of record at the request of Mr. Musslewhite. Mr. Musslewhite requested a conference immediately prior to the hearing pertaining to the imposition of sanctions scheduled for Monday, April 21, 1986. At this conference, Mr. Musslewhite moved to withdraw as Ginther's counsel of record and requested that this Court appoint a guardian for Ginther or have him committed for psychiatric observation.

39. Ginther attempted, but failed to dissolve or successfully appeal the writ of attachment issued by this Court in November, 1983.

40. Since the writ of attachment of November, 1983, was lawfully issued, all of Ginther's claims in the nature of a suit for malicious prosecution, false arrest, trespass and conversion fail for lack of an essential element: wrongful conduct on the part of the Defendants.

41. If Mr. Musslewhite had investigated the matters pertaining to the filing of an involuntary bankruptcy petition against Ginther in September, 1981, he would have learned that an order of relief adverse to Ginther was entered. He would have further learned that Ginther contested the filing of the involuntary petition and counterclaimed on several grounds alleging among other things that the bank's involuntary bankruptcy petition was filed in bad faith. It is a matter of public record that Ginther's counterclaim was denied by the bankruptcy court and his motion for new trial was overruled. It is also a matter of public record that the order of the bankruptcy court adjudicating Ginther and denying his counterclaim was not appealed.

42. The order of relief entered by the bankruptcy court is a conclusive adjudication that the filing of involuntary bankruptcy proceedings against Ginther was proper and that Ginther had no meritorious counterclaim against the petitioning creditors based upon the filing of that involuntary bankruptcy.

43. On March 27, 1986, Mr. Musslewhite orally dismissed most of the Defendants without ever having engaged in discovery.

44. Plaintiffs then sought leave to file their first amended original complaint. Plaintiff's first amended original complaint renamed all of the original Defendants as parties Defendant. Ginther's motion for leave to file his first amended complaint was denied.

45. Ginther's first amended original complaint alleged almost precisely the same causes of actions against the same Defendants. By the time of Ginther's attempted filing of his amended complaint, Defendants had filed several motions to dismiss and two Defendants had moved for summary judgment. These motions by Defendants clearly articulated the many legal and factual deficiencies found in the complaint. Nevertheless, Ginther sought to reurge the same allegations.

46. The action of Plaintiffs in dismissing most of the named Defendants on March 27, 1986, prior to any discovery by Plaintiffs, makes it obvious that Plaintiffs knew that many of the Defendants named in the complaint should not have been sued in the first place.

47. Mr. Musslewhite's conduct in this case is clearly in violation of 28 U.S.C. § 1927. He, like some of his predecessors, has unreasonably, unnecessarily and vexatiously multiplied these proceedings. His conduct has caused the Defendants to incur substantial attorney's fees, costs and mental anguish.

48. The attorneys' fees and expenses awarded by this Court as specified in the above and foregoing memorandum opinion are reasonable and customary. Such attorneys' fees and expenses were necessary.

49. This Court ordered Ginther to appear before the Court on March 27, 1986. Ginther disobeyed this order by failing to appear.

50. By order dated March 31, 1986, this Court ordered Ginther to appear at 9:30 a.m. on April 21, 1986. Ginther failed to appear.

51. By order pronounced on the morning of Monday, April 21, 1986, this Court ordered Ginther to appear at 1:30 p.m. on that afternoon. Ginther failed to appear.

52. In his letter dated April 8, 1986, it is clear that Mr. Musslewhite told Ginther to appear in Court when he had been ordered to do so, and the possible consequences of his nonappearance.

53. Mr. Musslewhite agreed to represent Plaintiffs on a contingent fee basis. However, no fee agreement was ever executed between the parties.

54. Adriana Newsom testified on April 21, 1986, that it was understood that Mr. Musslewhite would bear responsibility for the payment of all expenses associated with the prosecution of the complaint.

55. Plaintiffs have not paid for any of the expenses incurred in prosecution of the complaint.

56. Members of Ginther's family have advanced money to Ginther and/or his lawyers for purposes of pursuing Ginther's litigations.

57. Noble C. Ginther, Jr. and Minnie Lee Ginther have incurred approximately $105,000 in attorneys' fees for the prosecution of claims pertaining to Ms. Monday and the Ragland/Trustee Compromise. All but $38,000 of this amount has been paid to M.H. Cersonsky, the attorney representing Ginther in the prosecution of the Rule 60(b) motion.

58. Mr. Musslewhite testified on March 27, 1986, that Flemin Gaskin (Ginther's chauffeur) and Fergus Ginther, Jr. (Ginther's son) were inadvertently joined as Plaintiffs. According to Mr. Musslewhite, he instructed his typist to remove their names from the complaint prior to its filing. However, on April 21, 1986 Adriana Newsom testified that she, Ginther and Musslewhite reviewed and edited the complaint prior to its filing. The complaint contains handwritten notations, corrections and interlineations which she recognized as having been made by Mr. Musslewhite immediately prior to the filing of the complaint. Paragraph no. 128 of the complaint seeks actual damages of "no less than $1,000,000.00" on behalf of "Fergus Ginther, Jr." Paragraph no. 129 of the complaint seeks actual damages on behalf of Fleming [sic] Gaskin "of no less than $1,000,000.00." Section XVII of the complaint is captioned "ACTUAL DAMAGES TO PLAINTIFFS, FERGUS GINTHER, JR." Section XVIII is captioned "ACTUAL DAMAGES TO PLAINTIFF, FLEMING [sic] GASKIN."

59. Defendants addressed the claims asserted on behalf of Fergus Ginther, Jr. and Flemin Gaskin in their motions to dismiss the motions for summary judgment. Further, Defendants sought discovery against Plaintiffs Fergus Ginther, Jr. and Flemin Gaskin. Mr. Musslewhite opposed Defendants' motions to dismiss and for summary judgment on behalf of Plaintiffs Fergus Ginther, Jr. and Flemin Gaskin.

60. The Court finds that Mr. Musslewhite's joinder of Fergus Ginther, Jr. and Flemin Gaskin as Plaintiffs in the text of the complaint violates Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.

### Conclusions of Law

■ 1. The Court concludes as a matter of law that the complaint was prosecuted in bad faith, was frivolous, unnecessarily multiplied the proceedings in violation of 28 U.S.C. § 1927 and was prosecuted in violation of both the letter and the spirit of Fed.R.Civ.P. 11. The Court concludes that Ginther has obstructed the Defendants' legitimate discovery attempts in this cause. The Court concludes that sanctions against Plaintiffs and their attorney of record, Benton Musslewhite, are appropriate under 28 U.S.C. § 1927 and Fed.R.Civ.P. 11. The Court further concludes that sanctions are appropriate under Fed.R.Civ.P. 37 as a consequence of Plaintiffs' discovery abuses.

2. The Court has heretofore granted Defendants' motions to dismiss and motions for summary judgment. The Court concludes that attorneys' fees and costs should be awarded to Defendants as specified above.

3. The Court concludes as a matter of law that the filing of the complaint by Ginther violated this Court's order of May 16, 1986.

4. The complaint was filed in bad faith, vexatiously, wantonly and for oppressive reasons.

5. Fergus Ginther and Benton Musslewhite are both licensed attorneys. As such, they are officers of the Court. Their conduct in this matter reflects so egregious an abuse of the processes of this Court as to raise the most serious questions concerning their fitness to practice before the United States District Court for the Southern District of Texas.

6. The Court concludes as a matter of law that Ginther lacks standing to prosecute all claims owned by his Trustee in bankruptcy. Further, Ginther's lack of standing to again contest the Ragland/Trustee compromise because Ginther failed to file a written objection to such compromise as requested by order of this Court.

7. The Court concludes that Ginther inappropriately joined most of the persons or

entities named as Defendants and that Ginther's dismissal of such Defendants prior to conducting any discovery establishes his bad faith as a matter of law.

 8. The Federal Rules of Civil Procedure do not exempt a lawyer from the requirements of Rule 11 because the lawyer perceives that a statute of limitations problem exists.

9. There is nothing in the record to indicate that, as between Ginther and Musslewhite, one should be regarded as less blameworthy that the other with respect to filing of vexatious pleadings without complying with the requirements of Rule 11.

10. Liability for all sanctions imposed by this Court in connection with the filing and prosecution of the complaint should be imposed jointly and severally against Ginther, Adriana Newsom and Mr. Musslewhite.

11. If for any reason this Court's judgment granting Defendants' motions to dismiss and motions for summary judgment are reversed, overturned, vacated or set aside, then this case is dismissed in its entirety as a consequence of Ginther's violation of the temporary restraining order and preliminary injunction entered herein, Ginther's discovery abuses and the violation of this Court's Order of May 16, 1985.

12. This Court also finds that in view of Ginther's past history of filing frivolous lawsuits and frivolous appeals, it was reasonable for Defendants to file complete and well supported motions to dismiss and for summary judgment in order to create a record for appeal.

13. All findings of fact may be considered conclusions of law, if appropriate. Any finding of fact not expressly made herein shall be deemed made in support of these findings.

Mr. Musslewhite asked on April 21, 1986 that the imposition of sanctions be stayed pending an appeal. This request was denied. A final judgment imposing sanctions has been separately entered.

Ginther has filed a Motion for New Trial. Ginther's motion is based in principal part on an affidavit in opposition to Defendants' several motions to dismiss and for summary judgment. However, Ginther's affidavit was not timely filed and no leave of Court was ever sought, much less granted, to file such affidavit out of time. Ginther's motion for new trial is DENIED. An order denying Ginther's motion for new trial has been separately entered.